AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Central District of Illinois

FILED
JUL 19 2021
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )
INFORMATION ASSOCIATED WITH FACEBOOK  )
USER ID https://wwww.facebook.com/trap.m.watkins  )
THAT IS STORED AT PREMISES CONTROLLED BY  )
FACEBOOK, INC.  )

Case No. 21-MJ- 7081

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is attached hereto and incorporated by reference. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____Unknown_____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which is attached hereto and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

✔ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 401(3) | Disobedience or resistance to a court's lawful order, rule, or command |

The application is based on these facts:
See affidavit of Deputy U.S. Marshal Nathan Bostrom, filed in support of search warrant. To ensure technical compliance with 18 U.S.C. §§3121-3127, the warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation. See 18 U.S.C. §§ 3122(b), 3123(b).

☐ Continued on the attached sheet.

✔ Delayed notice of ___ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Nathan Bostrom
_____
*Applicant's signature*

Deputy U.S. Marshal Nathan Bostrom
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone ~~and electronic mail~~.

s/Eric I. Long

Date: 7/19/2021

_____
*Judge's signature*

City and state: Urbana, IL

United States Magistrate Judge Eric I. Long
*Printed name and title*



IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID https://www.facebook.com/trap.m.watkins THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 21-MJ-7081<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Nathan Bostrom, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Deputy with the United States Marshals Service and have been so employed since September 2017. I have received training in the Criminal Investigations Training Program Academy at the Federal Law Enforcement Training Center on how to conduct search warrants for electronic information. I have also taken the United States Marshals Service Criminal Investigations Program, which covered training on search warrants for electronic information, specifically internet-related search warrants. I have

also attended an informal class on various internet related search warrants by a Deputy United States Marshal who is subject matter expert. I have observed and assisted other Deputy U.S. Marshals in applying for and executing social media search warrants. I have applied and executed multiple Pen Register Trap and Trace orders including internet related orders.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. The law enforcement agency conducting the investigation is the United States Marshals Service ("USMS"). The USMS is attempting to locate Jamonhe WATKINS in order to execute an arrest warrant for WATKINS issued based upon his alleged violation of the terms and conditions of his supervised release. On July 9, 2018, WATKINS was sentenced to 32 months imprisonment and 3 years supervised release by the U.S. District Court of Central Illinois for the charge of Felon in Possession of a Firearm. Defendant has since been released from prison and began his term of supervised release. On May 28, 2021 the U.S. Probation Office filed a petition alleging a violation of the supervised release conditions. U.S. Magistrate Judge Eric I. Long issued a bench warrant for WATKINS on May 28, 2021. This bench warrant was thereafter delegated to the U.S. Marshals Service (USMS) for execution, and it remains unexecuted at this time.

5. The arrest warrant in this case is grounded in a violation of supervised conditions arising out of WATKINS's original criminal indictment and subsequent conviction. The government notes imprisonment on the supervised release violation for the underlying criminal matter is provided for by 18 U.S.C. § 3583(e)(3). Further, the USMS's investigation and attempt

to arrest WATKINS on the supervised release violation could also include possible violations by WATKINS of, *inter alia*, 18 U.S.C. § 401(3) (providing for penalties, including imprisonment, for contempt of court, namely "[d]isobedience or resistance to [the court's] lawful writ, process, order, rule, decree, or command"); 18 U.S.C. § 402 (relating to contempts constituting crimes and providing for the prosecution of a person for the willful disobeyance of a U.S. District Court writ, process, order, rule, decree, or command upon commission of a federal or state criminal offense); and 18 U.S.C. § 751(a) (providing criminal penalties for "[w]hoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge…" including "if the custody or confinement [e.g., supervised release] is by virtue of … conviction of any offense"). *See, e.g., U.S. v. Foster*, 754 F.3d 1186, 1191, n.3 (10th Cir. 2014) ("[T]he plain language of § 751(a) … evinces a broad scope. See 18 U.S.C. § 751(a) ("any custody ... by virtue of any process ... by any court" (emphasis added)). Limiting court-ordered custody to exclude defendants on supervised release does not support this legislative intent, nor does that limitation have any basis in the text of § 751(a)."); *U.S. v. Small*, 793 F.3d 350, 354 (3d Cir. 2015) (concluding "[c]onstructive custody under that provision of the statute [which states "from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge"] is established simply by virtue of the process issued by the judge, in this case the judgment of conviction entered by the District Court.").

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

3

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.  Based on training, experience, and the facts as set forth in this affidavit, the applicant hereby certifies that there is probable cause to believe that the information likely to be obtained by the requested search warrant is relevant to an "ongoing criminal investigation" described in the preceding paragraph. Thus, there is probable cause to search the information described in Attachment A for the information and evidence described in Attachment B.

8.  This Court has jurisdiction to issue the requested search warrant because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

## PROBABLE CAUSE

9.  The United States District Court for the Central District of Illinois issued an arrest warrant for Jamonhe WATKINS on May 28, 2021 for Supervised Release Violation pursuant to Title 18 United States Code, Section 3606 based on WATKINS committing new law violations. These violations include the following:

   a. On May 23, 2021, WATKINS committed the offenses of Unlawful Possession of a Weapon by a Felon, Leaving the Scene of an Accident, and Reckless Driving.

   b. On May 24, 2021 and May 25, 2021, WATKINS failed to report to the U.S. Probation Office as directed by U.S. Probation Officer Alisha Waite.

   c. On January 20, 2021 and February 15, 2021, WATKINS failed to participate in drug testing as required.

4

10. WATKINS is the subject of an outstanding felony arrest warrant and his whereabouts are unknown. The USMS is conducting a criminal investigation into the whereabouts of WATKINS, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

11. On, June 2, 2021, your affiant, Deputy U.S. Marshal Nathan Bostrom, gathered information showing WATKINS is likely in the Chicago area. WATKINS' last known residence, provided through US Probation, is 910 Gwendolyn Urbana, Illinois.

12. Throughout the investigation, your affiant has identified active social media accounts/profiles being used by WATKINS, including the **target account,** which is maintained on the social media website Facebook.

13. On June 10th, 2021, your affiant observed the **target account** with a vanity name of "Jamonhe Watkins (Sixty)." The vanity name is what appears to Facebook users who conduct a search. Photos on the **target account** are consistent with WATKINS's known USMS booking photos. Your affiant observed activity on the **target account** as recently as July 12, 2021.

14. Through my training and experience, I am aware that individuals utilizing Facebook will frequently rely on the site to maintain communications with friends, family, or acquaintances. Because individuals who are fleeing from apprehension by law enforcement will often rely on the aid of such persons to evade capture, the content of Facebook communications (including messages, voice-messages, and instant messages) will frequently contain information relevant to the fugitive's whereabouts or future locations to which he or she may flee. Additionally, I am aware that individuals post photographs or videos to their social media accounts, including Facebook. These photographs often have images or information contained in the background that allow investigators to determine the location at which the photo was taken or

discern other information from the photograph or video that may assist in apprehending a person fleeing from law enforcement.

## FACEBOOK BACKGROUND

15. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

16. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

17. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a

Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

19. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

21. Facebook users can send and receive private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date and participants of each call.

22. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

24. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

25. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

26. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31. Facebook regularly maintains information about the precise location of the device used to access a particular account, either through cellular towers, GPS built into the user's cellular telephone, or wireless access points. This information is used to provide tailored advertisements and other services to users.

32. Based on your affiant's training and experience in locating and apprehending potentially violent fugitives, the data sought by this warrant will assist in locating WATKINS, as described in Paragraph 14 above. Because successful apprehensions often rely on the element of surprise and on taking the fugitive unaware, it is often necessary to attempt an arrest during nighttime or the early morning hours, when most persons are sleeping. Further, apprehension tactical plans often change at the last minute based on unexpected movements or other behavior of the target. Therefore, your affiant cannot predict in advance when this data would need to be accessed and would need access to the data at all times of the day or night to ensure a safe and successful apprehension.

33. As explained herein, information stored in connection with a Facebook account may provide crucial information leading to the location of a fugitive, as well as the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling law enforcement to locate said fugitive for apprehension purposes and/or to establish and prove each element or alternatively, to exclude the innocent from further suspicion.

34. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information and location information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

35. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

36. Based on the foregoing, I request that the Court issue the proposed search warrant pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the **target account**, without geographic limit, for a period of forty-five days (45) days pursuant to 18 U.S.C. § 3123(c)(1). This warrant also authorizes the disclosure of geolocation data maintained and stored by Facebook related to the **target account**.

37. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. I further request that the Court direct Facebook to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

2:21-mj-07081-EIL  # 1  Page 13 of 16

38. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court of the Central District of Illinois is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

39. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

40. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

s/Nathan Bostrom

Deputy U.S. Marshal Nathan Bostrom
U.S. Marshals Service

Attested to by reliable electronic means in accordance with Fed. R. Crim. P. 4.1
on July __19__, 2021.    s/Eric I. Long

Hon. ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID https://www.facebook.com/trap.m.watkins that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All location data collected by Facebook for the user of the target account described in Attachment A, including data collected by Facebook's location services via the user's mobile phone or other device, and all "check-ins" and IP addresses utilized in relation to the account. This information is to include historical location data from May 27, 2021, to the present and also current location data on a real-time or near-real-time basis. Facebook is required to provide any such data they collect, regardless of the time of day;

(b) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from May 27, 2021, to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos; and

(c) All other records and contents of communications and messages made or received by the user **from 30 days forward from the start of this order**, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests.

The provider shall begin producing the information required by this attachment within seven (7) days of the date of service of the warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 3606 involving Jamonhe WATKINS since 5/27/2021, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Communication and electronic evidence of current and previous locations of federal fugitive J. WATKINS;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(d) Records that help reveal the location of the person or persons using the Facebook Account identified in Attachment A.